**Tagged**



**ORDERED in the Southern District of Florida on July 05, 2007.**

                                                        **Steven H. Friedman, Judge**
                                                        **United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

IN RE:

NEIL LITTEN,                                                                CASE NO. 05-34756-BKC-SHF
                                                                                 Chapter 7 Proceeding
        _____Debtor_____/.

## ORDER APPROVING STIPULATION TO COMPROMISE CONTROVERSY

**THIS CAUSE** came on to be heard on November 29, 2006, upon the trustee's Motion to Approve Stipulation to Compromise Controversy ( "Motion to Approve Stipulation" - C. P. 130). By way of the Motion to Approve Stipulation, the trustee seeks to settle all objections raised by any party relating to the claimed exemptions of the debtor, Neil Litten. Pennsauken Magnetic Resonance Imaging Center, P.C. objects to the Motion to Approve Stipulation and filed an Objection to the Debtor's Claim of Exemptions (C.P. 43) on December 29, 2005. The Court, having carefully considered the Motion to Approve Settlement and the objections thereto, along with arguments of counsel, **grants** the Motion to Approve Settlement for the reasons set forth below.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(2)(A) and (B), 28 U.S.C. § 1334(b), and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019, the Court, after notice to all creditors and a duly-scheduled hearing, may approve a compromise or settlement. "It has long been the law that approval of a settlement in a bankruptcy proceeding is within the sound discretion of the court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air,* 85 B.R. 886, 890-891 (Bankr.S.D.Fla. 1988).

## PROCEDURAL BACKGROUND

This case was commenced on September 13, 2005, with the debtor's filing of his voluntary chapter 7 petititon. In Schedule C of the debtor's bankruptcy schedules (C. P. 1), the debtor claimed as exempt certain annuities valued at $727,000.00, an IRA account valued at $794,000.00, and a Boca Raton, Florida residence valued at $1.5 million. On December 29, 2005, Pennsauken Magnetic Resonance Imaging Center, P.C. ("Pennsauken") filed an Objection to the Debtor's Claim of Exemptions as to the debtor's IRA account, the annuities, and the Boca Raton residence. It is Pennsauken's position that these assets should be made available to creditors, including Pennsauken, to satisfy the claims of creditors. On December 29, 2005, the trustee filed a Limited Objection to the Debtor's Claimed Exemptions (C.P. 39) objecting to the debtor's claimed exemption for the IRA account and the annuities. The basis of the trustee's objection is that it appears that a New Jersey State Court had found the IRA account and the annuities to be non-exempt due to a fraudulent transfer (C.P. 39, ¶3).

Pursuant to the Motion to Approve Stipulation to Compromise Controversy filed on July 7, 2006, the trustee seeks court approval of a settlement agreement between the trustee and the debtor that would "settle any and all objections, by any and all parties, relating to the exemptions claimed

2

by the Debtor . . . for a payment of Two Hundred Thousand Dollars ($200,000.00)" (C.P. 130, ¶6). Pennsauken objects to this settlement agreement as being below the lowest range of reasonableness required for approval of a settlement.

## THE NEW JERSEY STATE COURT LITIGATION AND JUDGMENT

The debtor is an osteopathic physician who has held a medical license in New Jersey since 1966. Pennsauken is a professional corporation organized and existing under the New Jersey Professional Services Corporation Act. Pennsauken was formed in 1988 and is engaged in the business of providing medical imaging in New Jersey. The debtor was a director, officer, and shareholder of Pennsauken. A brief synopsis of this long and winding road of litigation between these parties is set forth below.

On October 26, 2000, the debtor filed a complaint against Pennsauken in the Superior Court of New Jersey, Chancery Division, Camden County (*Dr. Neil Litten v. Pennsauken Magnetic Resonance Imaging Center, P.C., et al.*, Case No. C-136-000). The debtor claimed, in large part, that Pennsauken had not paid his portion of a July 2000 dividend distribution. The debtor further alleged that Pennsauken had falsely asserted that he no longer was a full-time practicing physician. According to the debtor, Pennsauken, by labelling the debtor as such, was attempting to classify him as a terminated shareholder pursuant to the Pennsauken Shareholder Agreement ("Shareholder Agreement").

Pursuant to the Shareholder Agreement, if a shareholder were to become "professionally incapacitated," eligibility to remain a shareholder would terminate. The Shareholder Agreement defines a doctor to be "professionally incapacitated" if the doctor ceases "rendering full-time

services to patients within a forty-five (45) mile radius of the Corporation's principal offices for any reason other than disability."

Based upon the terms of the Shareholder Agreement, Pennsauken defended the action by claiming that the debtor no longer was eligible under the Shareholder Agreement, as he had become "professionally incapacitated." As a result, Pennsauken filed a counterclaim against the debtor seeking a declaration that the debtor was a terminated shareholder because he had become "professionally incapacitated." Pennsauken further alleged that the debtor breached the Shareholder Agreement, breached his fiduciary duties, was unjustly enriched, and committed fraud by concealing his disability and professional incapacity while continuing to take dividend payments. Pennsauken sought the repayment of all dividends improperly received by the debtor, as well as prejudgment interest.

After a nine-day trial in early 2002, the New Jersey State Court entered an opinion finding the debtor to be professionally incapacitated under the Shareholder Agreement. The New Jersey State Court also entered judgment in the amount of $1,129,876.63. After failed collection efforts against the debtor, in March, 2004, Pennsauken filed a Motion for Turnover of the subject IRA and the annuities with the New Jersey State Court. The IRA and the annuities previously had been frozen pursuant to a writ of attachment. Pennsauken argued that the IRA and the annuities were not exempt from execution and could be attached for purposes of satisfying the outstanding judgment against the debtor under a fraudulent transfer theory. While Pennsauken's Motion for Turnover was pending, the Superior Court of New Jersey, Appellate Division, issued a ruling on the debtor's appeal from the New Jersey State Court's judgment. While affirming the New Jersey State Court's findings regarding liability, the Superior Court of New Jersey remanded the matter to the New Jersey State

Court for a re-calculation of the judgment amount, finding that certain offsets were appropriate against the judgment based upon **(1)** the debtor's patient referrals to Pennsauken dating back to 1997 and **(2)** a credit in favor of the debtor for the purchase value of his stock and the aggregate amount of his director's salary. Pursuant to the remand, the following ruling was announced on the Motion for Turnover of the IRA and the annuities by the New Jersey State Court:

> Now with respect to the motion by PMRIC for the Court to turn over funds with respect to their demand, this Court is currently in the process of reviewing application with respect to distribution - - or I shouldn't say distribution - - recalculation, having been ordered by the Appellate Division with respect to those funds in dispute.
>
> And as a result thereof, the motion by PMRIC to turn over funds to PMRIC, that motion is denied. This case was remanded to the trial court for recalculation of the judgment award. Thus, while this Court agrees that PMRIC may be entitled to all or a portion of the monies currently attached, I'm not prepared at this moment, after not having resolved the calculations, as to whether any of those funds ought be distributed, or any portion of those funds - - pardon me - - any portion of those funds ought be distributed to PMRIC.

*Neil Litten D.O. v. Pennsauken Magnetic Resonance Imaging Center, P.C., et al.*, Superior Court of New Jersey, Chancery Division, Camden County, Case No. C-136-000**,** June 24, 2004, Motion for Turnover of Funds, Docket No. C-136-00**.**

On September 13, 2005, the debtor filed for bankruptcy protection, and on October 11, 2005, the New Jersey State Court entered an order dismissing the state court case and, consequently, dissolving the writ of attachment against the debtor's IRA account and the annuities. As a result of the debtor's bankruptcy filing, an order recalculating the judgment never was entered by the New Jersey State Court.

**STIPULATION APPROVAL ARGUMENTS**

The trustee seeks approval of the proposed Stipulation with the debtor whereby "any and all objections, by any and all parties", including those raised by Pennsauken, "relating to the exemptions claimed by the Debtor, for a payment of Two Hundred Thousand Dollars ($200,000.00)" would be settled (C.P. 130, ¶6). The Stipulation does not preclude any creditor from bringing its own action objecting to discharge or dischargeability. The trustee contends that this Stipulation is in the best interests of the creditors and the bankruptcy estate, based upon a careful analysis of the debtor's assets. Specifically, it is the trustee's position, consistent with the debtor's testimony at the November 29, 2006 hearing, that the debtor's permanent residence has been in Florida since 1997, and that the funds held in the IRA and the annuities derived from either an existing IRA, disability proceeds, or a profit sharing plan. In the Objection to Exemptions, Pennsauken claims that because the funds were transferred from an ERISA to an IRA, the funds lost their protected status and are subject to attachment. However, the trustee contends that, while the transfer might cause the funds to lose their protected status under ERISA, the funds still would be protected under applicable law relating to an IRA. As such, those assets are protected from liquidation for the benefit of creditors, and any litigation pertaining to those assets would be fruitless to the creditors and result in extraordinary expense, inconvenience and delay in the administration of this case.

Pennsauken argues that the New Jersey State Court issued a judgment against the debtor and found that the funds presently located in the debtor's IRA and the annuities were the products of fraudulent transfers from a profit-sharing plan and that those assets consequently could be attached. Pennsauken further asserts that the Florida residence also is potentially non-exempt, and that $200,000 is not an appropriate amount to justify a settlement as to **(1)** all of the debtor's exemption

claims for personal property, based upon the combined value of the IRA and annuities of $1,521,000 as of the petition date; and **(2)** the debtor's homestead exemption claim, for the value of the Florida residence, $1.5 million. As such, Pennsauken claims that the settlement falls below the lowest range of reasonableness based upon its potential judgment, and that accordingly, approval of the proposed settlement should be denied.

## COLLATERAL ESTOPPEL ARGUMENT

Pennsauken argues that the doctrine of collateral estoppel is applicable to the New Jersey State Court decision. Pennsauken claims that the New Jersey State Court was presented with the identical issues that are before this Court relating to the fraudulent transfers of the funds currently held in the IRA account and the annuities. Pennsauken further asserts that the New Jersey State Court issued a final judgment on the merits as to the fraudulent transfer, and contends that it is of no consequence that the debtor filed for bankruptcy before the New Jersey State Court had made a final determination as to the exact judgment amount.

The trustee counters the collateral estoppel argument by differentiating the nature of the New Jersey State Court litigation. First, the trustee contends that the issue as to the exempt status of the debtor's assets was not a critical and necessary part of the judgment in the prior action. The trustee reasons that the issue before this Court is not a critical and necessary part of the New Jersey State Court decision, since the New Jersey State Court denied turnover of the funds in the IRA account and the annuities and never entered a final judgment finding the funds to be non-exempt. The trustee reiterated that the New Jersey State Court never made a determination as to how much, if any, of the funds in the IRA account and the annuities should be turned over. As such, there are many issues, such as any set-off entitlements and exemption issues, that were yet to be resolved. Therefore, the

trustee takes the position that not only were the issue not identical, but also that the orders entered by the New Jersey State Court are interlocutory and as such, do not amount to a final adjudication or judgment such that collateral estoppel would apply.

## SETTLEMENT APPROVAL ANALYSIS

The Court must consider four factors in deciding whether to approve a proposed settlement: (a) the probability of success in the litigation; (b) the difficulties to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay surrounding it; and (d) the interests of the creditors. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II Ltd.),* 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). In evaluating a proposed settlement, the Court must make an informed, independent judgment that the compromise is fair and equitable. The judgment requires consideration of all relevant facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). It is the Court's duty to "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *In re Southeast Banking Corp.,* 314 B.R. 250, 272 (Bankr.S.D.Fla. 2004).

The Court has considered the four factors in *Justice Oaks* and determines that the proposed settlement merits approval. Based upon the evidence, the Court is satisfied that the trustee has carefully considered all of the information that has been elicited through not only the trustee's Rule 2004 examination of the debtor, but also the Rule 2004 examination conducted by Pennsauken. The trustee also has reviewed voluminous documentation and has represented to the Court that, although

Pennsauken's claim against the debtor is not entirely without merit, it is unlikely that Pennsauken would succeed in further litigation. The Court agrees with this analysis, based upon the unresolved issues from the New Jersey State Court, and specifically, the debtor's right to any set-offs against the judgment as well as the status of the IRA and the annuities. To that extent, any future litigation would be complex, expensive and result in lengthy delays due to the numerous issues remaining to be litigated, with at best, an uncertain outcome. As such, the Court is of the opinion that the settlement falls above the lowest point in the range of reasonableness, and that the creditors and the bankruptcy estate are best served through a quick and efficient resolution of the pending claims.

## COLLATERAL ESTOPPEL ANALYSIS

Relitigation of an issue is barred under the doctrine of collateral estoppel when four elements are present: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated; (3) the determination of the issue was a critical and necessary part of the judgment in the prior action; and (4) the party against whom collateral estoppel is asserted had full and fair opportunity to litigate the issue in the prior proceeding. *In re Martin*, 278 BR 634 (Bankr. S.D. Fla. 2002).

The Court does not find the issue presently pending before this Court to be the identical issue involved in the New Jersey State Court action. The issue before this Court is whether the debtor's assets are exempt under 11 U.S.C. § 522, in accordance with the laws of the State of Florida. The issue litigated by the New Jersey State Court did not relate to the exempt status of the IRA and the annuities. Rather the New Jersey State Court determined that there was an uncertain amount owed to Pennsauken by the debtor pursuant to a breached Shareholder Agreement, and that a fraudulent

9

transfer occurred. To reiterate, as a result of Pennsauken's Motion for Turnover of the IRA and the annuities, the New Jersey State Court made this finding:

> Thus, while this Court agrees that PMRIC may be entitled to all or a portion of the monies currently attached, I'm not prepared at this moment, after not having resolved the calculations, as to whether any of those funds ought be distributed, or any portion of those funds - - pardon me - - any portion of those funds ought be distributed to PMRIC.

*Neil Litten D.O. v. Pennsauken Magnetic Resonance Imaging Center, P.C., et al.*, Superior Court of New Jersey, Chancery Division, Camden County, Case No. C-136-000, June 24, 2004, Motion for Turnover of Funds, Docket No. C-136-00.

Thus, this Court finds that at no time did the New Jersey State Court enter an order determining the IRA or the annuities to be non-exempt and as such, collateral estoppel does not apply.

### CONCLUSION

The Court has fully digested the history of the complex litigation between Pennsauken and the debtor. After applying the appropriate legal standards as discussed above pursuant to *Justice Oaks* and *In re Southeast Banking Corp.,* the Court finds that the trustee's Motion to Approve Stipulation to Compromise Controversy is fair and equitable. Accordingly, the trustee's Motion to Approve Stipulation to Compromise Controversy is **granted**.

###

**The Clerk of Court is directed to provide
a copy of this Order to all parties of record.**